---

Michael Allen Shepersky,                                    Civil No. 09-2049 (PJS/SRN)

        Plaintiff,

v.                                                         **REPORT & RECOMMENDATION**

Timothy Wengler,

        Defendant.

---

Michael Allen Shepersky, *pro se,* Minnesota Correctional Facility, 1101 Linden Lane, Faribault, Minnesota 55021.

Russell Conrow, Lake County Attorney, Lake County Attorney's Office, 601 3rd Ave., Two Harbors, Minnesota 55616, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Petitioner Michael Allen Shepersky's Petition for habeas corpus relief under 28 U.S.C. § 2254 [Doc. No. 1]. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be denied and the action be dismissed with prejudice.

## I.    <u>BACKGROUND</u>

Michael Allen Shepersky, an inmate at the Minnesota Correctional Facility in Faribault, Minnesota, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. No. 1]. Petitioner is currently serving a 15-year sentence for five offenses arising from separate incidents occurring in late 2004 and early 2005. The offenses include fifth-degree assault,

second-degree assault, drive-by shooting and two driving while impaired offenses. In January 2006, Petitioner entered into a global plea agreement on four offenses which resolved all of the then-pending charges (drive-by shooting, fifth-degree assault, second-degree assault and one of the driving while impaired offenses). Shepersky v. Minnesota, No. A07-1525, 2008 WL 3897444 (Minn. Ct. App. Aug. 26, 2008). The plea agreement did not include one of the two driving while impaired charges, for which Petitioner was convicted following a jury trial. Petitioner later filed a petition for post conviction relief seeking to withdraw his guilty plea, which was denied.[1]

Petitioner asserts six "grounds" for habeas relief: (1) any procedural default in his Petition should be excused because Petitioner is actually innocent of the drive-by shooting; (2) the state withheld exculpatory evidence proving Petitioner's innocence; (3) Petitioner had ineffective assistance of counsel; (4) Petitioner was not provided substitute counsel after alleging his public defender coerced him into pleading guilty; (5) Petitioner's plea agreement to the drive-by-shooting was not accurate, voluntary or intelligent; and (6) Petitioner's plea was not voluntary because it was based on a promise of leniency to his wife. He also argues that the Minnesota Court of Appeals erred by analyzing the incorrect conviction in its opinion and by concluding his claims relating to the ineffective assistance of counsel were barred from reconsideration by collateral estoppel.

## II.    EXHAUSTION OF REMEDIES

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A federal claim is fairly presented when the

---

[1]  For the complete factual and procedural history of this case, see this Court's Report & Recommendation dated January 6, 2010 [Doc. No. 9].

petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d 199, 200-01 (8th Cir. 1995)); see also McDougald v. Lockhart, 942 F.2d 508, 510 (8th Cir. 1991).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process. O'Sullivan, 526 U.S. at 845. A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). There are two exceptions: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal; and (2) where the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006).

When a claim is procedurally defaulted in state court, the federal court considering the habeas petition must determine whether the prisoner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice. McCall, 114 F.3d at 758 (citing Coleman, 501 U.S. at 750). Prejudice need not be considered where a petitioner has failed to fulfill the cause prong of the test. Id. The miscarriage

of justice exception is only available to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person.  Id.  If the exceptions do not apply, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim.  Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995); Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

Respondent concedes that Petitioner exhausted his state court remedies with respect to the claims that Petitioner's counsel was ineffective or that he should have been appointed new counsel when there was a breakdown in the attorney-client relationship.  However, Respondent argues that Petitioner has not exhausted his administrative remedies with respect to the other claims for relief because the claims either were not raised with the Minnesota appellate courts or, if the claims were raised, Petitioner did not refer to the Constitution or a federal law.

This Court partially disagrees with Respondent.  Petitioner fairly presented his claim that his plea agreement was not accurate, voluntary, or intelligent.  In his pro se brief to the Minnesota Court of Appeals, Petitioner raised these issues and cited to North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).  This claim is, therefore, properly exhausted and not procedurally defaulted.

With respect to the government's alleged failure to produce exculpatory evidence proving Petitioner's innocence, Petitioner asserts that he raised this issue in his application for post-conviction relief and at two hearings related to that application.  There is no evidence, however, that Petitioner raised these issues with the appellate courts, which is essential to the proper exhaustion of state court remedies.  Because this claim was not fairly presented to the Minnesota appellate courts, the next question is whether the claim is unexhausted or procedurally defaulted. Because Petitioner raised other issues on direct appeal, the claim relating to the late disclosure of

exculpatory evidence is barred from further review by the state courts pursuant to Knaffla. Neither of the exceptions permitting review by the state appellate courts apply because a claim relating to the failure to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) is not so novel that its legal basis was not reasonably available at the time of the appeals. Likewise, there is no evidence that Petitioner's failure to raise the claim was excusable or that fairness requires review of the issue. The claim is therefore procedurally defaulted.

The Court must next consider whether Petitioner has demonstrated cause and prejudice for the procedural default, or whether Petitioner has demonstrated that failure to review the claim will result in a fundamental miscarriage of justice. Neither exception applies in this case. First, Petitioner has not asserted any reason or cause excusing the failure to raise the Brady claim on appeal. It is clear Petitioner knew of this claim because he raised it in motions for post-conviction relief. Finally, Petitioner has not presented any evidence of some external impediment which prevented him from arguing the alleged Brady violations in the appellate courts. Because Petitioner has not shown cause for the procedural default, the failure is not excused.

Second, while the Court construes the Petition to argue that Petitioner's "actual innocence" excuses the procedural default under the "fundamental miscarriage of justice" exception, the exception is not applicable in this case. In cases in which a defendant pleads guilty, the miscarriage of justice exception applies only when the petitioner establishes a constitutional error in the plea that has probably resulted in the conviction of one who is actually innocent. Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998). To establish actual innocence, the petitioner must demonstrate that, in light of all

the evidence, "it is more likely than not that no reasonable juror would have convicted him." Id. (citing Schlup v. Delo, 513 U.S. 298, 327-328, 115 S. Ct. 851, 867-868, 130 L. Ed. 2d 808 (1995)). This must be established through "new reliable evidence" that was not available at trial. Storey v. Roper, 603 F.3d 507, 524 (8th Cir. 2010) (citing House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) and Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004)). Evidence is only "new" if it was "not available at trial and could not have been discovered earlier through the exercise of due diligence." Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005) (citing Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001)). Petitioner has not presented any new evidence suggesting he is innocent of the drive-by-shooting charge to which he pled guilty.[2] All of the evidence Petitioner offers in support of his innocence, including witness statements, ballistic reports, and a polygraph of the victim, was known and available to Petitioner before his guilty plea and at the appellate proceedings. (See Mem. in Supp. of the Merits of the Habeas Pet. at 7-8, 10). Therefore, the miscarriage of justice exception does not apply and the claim is procedurally defaulted. This Court may not adjudicate a procedurally defaulted claim on habeas review, and therefore the Court recommends that the Petition be denied with respect to the claim that the state belatedly disclosed exculpatory evidence.[3]

---

[2] Although Petitioner pled guilty to multiple counts in the global plea agreement, Petitioner appears to contend he is innocent of the drive-by-shooting charge only, not the other charges.

[3] Even if this Court were to consider the merits of this claim, the Court would recommend denying the Petition. Pursuant to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) a prosecutors' failure to disclose exculpatory evidence material to guilt or punishment violates due process. The Supreme Court has stated that the failure to disclose Brady materials is relevant to the fairness of a trial, not whether a plea is voluntary. United States v. Ruiz, 536 U.S. 622, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). Therefore, the failure to disclose such evidence prior to a guilty plea does not violate the due process clause. Id. at 629. In reaching this conclusion, the Court recognized that due process considerations do not require the prosecution to disclose all information that might be of use to a defendant in deciding whether to plead guilty. Id.; see also Matthew v. Johnson, 201 F.3d 353, 361-362 (5th Cir. 2000) (a prosecutor's failure to disclose exculpatory evidence to an individual waiving his right to trial

III. **STANDARD OF REVIEW**

The AEDPA limits a federal court's review of a state decision. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Pursuant to the Act, a federal court may not grant a habeas corpus application on a claim that was adjudicated on the merits in state court proceedings, unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d); <u>Berghuis v. Thompkins</u>, -- U.S. --, 130 S. Ct. 2250, 2259 (2010); <u>Knowles v. Mirzayance</u>, -- U.S. --, 129 S. Ct. 1411, 1412, 173 L. Ed. 2d 251 (2009). The Supreme Court has cautioned that there is a distinction between an "*unreasonable* application of federal law and an *incorrect* application of federal law." <u>Renico v. Lett</u>, -- U.S. --, 130 S. Ct. 1855, 1862 (2010) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)) (emphasis in original). Because of this distinction, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Williams</u>, 529 U.S. at 410. The Supreme Court has thus interpreted the AEDPA to impose a "highly deferential standard for evaluating state-court rulings," <u>Renico</u> 130 S. Ct. at 1862 (quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997)). Further, state-court decisions must "be given the benefit of the doubt." <u>Id</u>. (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d

---

by entering a plea is not a constitutional violation). Therefore, Petitioner cannot seek habeas relief for a <u>Brady</u> violation after pleading guilty to the drive-by-shooting. Moreover, the government provided Petitioner with the allegedly exculpatory information prior to his guilty plea and prior to trial. Therefore, there is nothing in the record to suggest that the failure to disclose the information made his plea unintelligent or involuntary.

279 (2002) (per curium)).  Findings of fact by the state trial and appellate courts are presumed correct unless rebutted by clear and convincing evidence. § 2254(e)(1); <u>Williams v. Norris</u>, 576 F.3d 850, 859 (8th Cir. 2009).

## IV.   **DISCUSSION**

### A.   **Plea Agreement**

Petitioner contends that he should be granted habeas relief because there was not a sufficient factual basis for his guilty plea and it was not voluntary or intelligent.  Specifically, Petitioner states he felt coerced to plead guilty by his public defender and he felt coerced to plead guilty because of the government's promise of leniency to his wife in exchange for his plea.  He further argues that, had the public defender's office honored his request for substitute counsel, he would not have pled guilty.  Moreover, Petitioner contends that his <u>Alford</u> plea, in which he pled guilty to the drive-by shooting while still maintaining his innocence, did not have a sufficient factual basis.

#### 1.  **Voluntary and Intelligent**

Generally, when a defendant, who has been advised by competent counsel, makes a voluntary and intelligent plea of guilty, the plea may not be collaterally attacked.  <u>White v. United States</u>, 858 F.2d 416, 421 (8th Cir. 1988).  Thus, with respect to a federal habeas petition challenging the adequacy of a guilty plea, the court's inquiry is limited to the competence of counsel and the voluntariness of the plea.  <u>Id.</u>; <u>United States v. Morgan</u>, 230 F.3d 1067, 1070 (8th Cir. 2000).

Because a guilty plea waives numerous constitutional rights, a plea is constitutionally valid only to the extent it is voluntary and intelligent.  <u>United States v. Ochoa-Gonzalez</u>, 598 F.3d 1033, 1036 (8th Cir. 2010) (citing <u>Bousley v. United States</u>, 523 U.S. 614, 618, 118 S. Ct.

1604, 140 L. Ed. 2d 828 (1998)); see also Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). As the Supreme Court has stated, "[t]he standard . . . remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). A guilty plea may be involuntary in two circumstances: (1) when the defendant does not understand the nature of the constitutional protections he is waiving; or (2) when the defendant has such an incomplete understanding of the charges against him that his plea "cannot stand as an intelligent admission of guilt." Ivy, 173 F.3d at 1141 (citing Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)). A plea is not intelligent when the defendant did not receive "real notice of the true nature of the charge against him." Id.; Dejan v. United States, 208 F.3d 682, 685 (8th Cir. 2000). "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady v. United States, 397 U.S. 742, 755 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Where the plea was not coerced by threats, misrepresentations, or improper promises, there is no constitutional violation related to the guilty plea. Ford v. Lockhart, 904 F.2d 458, 463 (8th Cir. 1990)

A petitioner's representations during the plea hearing "carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Bramlett v. Lockhart, 876 F.2d 644, 648 (8th Cir. 1989). Therefore, to obtain habeas relief, the petitioner "must overcome strong presumptions" of the voluntariness of his or her guilty plea based on the

defendant's representations at the plea hearing. Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993). The court considers the totality of the circumstances surrounding the entering of the plea agreement to determine if the defendant voluntarily agreed to its terms. United States v. Michelsen, 141 F.3d 867, 871 (8th Cir. 1998). Voluntariness is determined by factors at the time of the plea. Lindner v. Wyrick, 644 F.2d 724, 728 (8th Cir. 1981) (citing Ford v. United States, 418 F.2d 855, 858 (8th Cir. 1969)).

The fact alone that Petitioner maintained his innocence of the drive-by shooting while pleading guilty does not make his plea unconstitutional. Pursuant to Alford, a defendant may plead guilty to a crime without admitting guilt by acknowledging that the government's evidence is sufficient to obtain a conviction. Alford, 400 U.S. at 37. Such a plea is not unconstitutional merely because the defendant maintains his innocence. Id.; White Hawk v. Solem, 693 F.2d 825, 828 (8th Cir. 1982). "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. at 828-29.

The Minnesota Court of Appeals' opinion, which is entitled to great deference in this proceeding, correctly concluded that Petitioner's guilty plea was voluntary. At the time of the plea hearing, Petitioner never argued that he was being coerced into pleading guilty or that he had any misgivings about the plea. (See Transcript of Plea Hearing on January 26, 2006, Petitioner's Ex. 5 at 9-11). There is no dispute that all of the terms of the plea agreement were disclosed to Petitioner and the court before Petitioner entered his plea. At the hearing, Petitioner's attorney recited the specific details of the plea agreement and outlined the various charges against Petitioner. In response to questions from the court, Petitioner acknowledged he understood the agreement, that he wanted to enter into the agreement, and that he had the

opportunity to ask his counsel questions about the agreement.  (Id.).  The Petitioner affirmatively stated that he was not threatened into pleading guilty, and that the government did not make any other promises to induce him to plead.  (Id.).  Petitioner's current, after-the-fact arguments that he felt coerced at the time of the plea agreement are insufficient to overcome the strong presumption that he entered into the agreement knowingly and voluntarily.

Indeed, the majority of Petitioner's arguments relate to events that occurred *after* the plea hearing, at the subsequent sentencing.  But the test of whether a plea is voluntary focuses on the defendant's willingness to enter into the plea at the time the plea was made.  Lindner, 644 F.2d at 728.  The fact that Petitioner had misgivings about the plea after making the deal is irrelevant to the voluntariness inquiry.  Further, Petitioner's arguments arising from the two sentencing hearings are not supported by the record.  While Petitioner clearly had disagreements with his public defender, nothing in the record suggests that Petitioner's lawyer coerced him into pleading guilty.  In fact, Petitioner himself stated on the record, at the sentencing, that he did not believe his lawyer had coerced him into pleading guilty, only that he had reservations about the wording of the agreement. (See Transcript of Sentencing on February 3, 2006, Petitioner's Ex. W at 4-5).  At the sentencing, Petitioner's attorney specifically stated that he would represent Petitioner if he wanted to continue with the sentencing, but if he wanted to seek to withdraw his plea, the public defender's office would make arrangements for Petitioner to meet with another attorney.  At the continued sentencing, Petitioner affirmatively stated to the Court, "I'll just leave [the plea] because my counsel, Mr. Coz, I trust in him."  These statements on the record at the time of the plea hearing and sentencing belie Petitioner's argument that his plea was not made voluntarily.

Petitioner also contends that his plea was not voluntary because it was induced by a promise of leniency to his wife on a related felony charge.  A guilty plea, however, is generally

not considered involuntary simply because it is based in part on the government's promise of leniency to a friend or relative of the defendant.  United States v. Arrellano, 213 F.3d 427, 431 (8th Cir. 2000); United States v. Vest, 125 F.3d 676, 680 & n. 6 (8th Cir. 1997); Anderson v. United States, No. 02-3655, 2003 WL 21135556, *9 (D. Minn. May 15, 2003).  In this case, the court was specifically made aware of the promises in the plea agreement related to Petitioner's wife and the totality of the circumstances do not suggest this fact made the plea involuntary.  The Minnesota Court of Appeals correctly concluded that Petitioner's plea was made voluntarily and intelligently.  Therefore, this Court recommends that the Petition be denied.

### 2. Factual Basis

As set forth above, a defendant may enter an Alford plea in which he or she pleads guilty to a charge while still maintaining their innocence.  Because a defendant is denying his or her guilt in such a plea, the Constitution requires the plea to be supported by a strong factual basis.  White v. United States, 858 F.2d 416, 423 (8th Cir. 1988) (citing Wabasha v. Solem, 694 F.2d 155, 157 (8th Cir. 1982)).  The Eighth Circuit has defined "strong factual basis" as "sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense."  Id. (citing Gregory v. Solem, 774 F.2d 309, 312 (8th Cir.1985)).  The factual basis must be established independent of the defendant's statements.  United States v. Johnson, 326 F.3d 934, 936 (8th Cir. 2003).

The Court first notes that, when the Minnesota Court of Appeals considered Petitioner's pro se arguments regarding the factual basis for his plea agreement, the court only considered the factual basis for Petitioner's Alford plea to the assault charge and did not also consider the factual basis for his plea to the drive-by-shooting.  Nevertheless, the record establishes that there was a factual basis for the drive-by-shooting plea at the time of the plea hearing and sentencing.

Pursuant to Minn. Stat. § 609.66 subd. 1e(b), an individual is guilty of drive-by-shooting when the defendant is driving or has just exited from a motor vehicle and recklessly discharges a firearm at or towards a person or an occupied building or motor vehicle. At the hearing, the court and Petitioner's lawyer asked him questions regarding the facts of the charge and why Petitioner was pleading guilty despite his claims of innocence. The evidence supporting the drive-by-shooting included a statement by the victim of the shooting, Josh Solem, who stated Petitioner had driven to his rural home and shot a pistol at his pole barn and then shot into his home. Law enforcement officers collected .25 caliber cartridges in the driveway of the location, and a .22 caliber bullet in the home. Additionally, prosecutors intended to introduce evidence at trial that Petitioner's wife disclosed to law enforcement officers that Petitioner had a small pistol in his possession. Further, the victims of the second degree assault that occurred the night before the drive-by-shooting also would have testified. Those witnesses would have testified that Petitioner possessed a small hand gun and made threats with that gun the night before the drive-by-shooting. Petitioner acknowledged at the plea hearing that, if the jury believed these facts, he could be found guilty of drive-by-shooting under the statute. Thus, there was a sufficient factual basis to support Petitioner's Alford plea related to this charge.

Petitioner argues, however, that the witnesses who would have testified against him were not credible. For instance, he notes that Josh Solem failed a polygraph related to the incident, and subsequently admitted to law enforcement that he shot into his own house. Implicit in most Alford pleas, however, is the defendant's belief that the witnesses against him are lying or otherwise not credible. White, 724 F.2d at 716. This alone does not make his Alford plea unconstitutional. Id. Therefore, this Court recommends that the Petition be denied.

**B.     Sixth Amendment Right to Counsel**

Petitioner also contends that his Petition should be granted because his public defender was ineffective and he should have been appointed alternate counsel when there was a breakdown in the attorney-client relationship.

Under the Sixth Amendment, criminal defendants are entitled to the assistance of counsel at all critical stages of the proceedings against them. Raymond v. Weber, 552 F.3d 680, 684 (8th Cir. 2009) (citing Hanson v. Passer, 13 F.3d 275, 278 (8th Cir. 1994)). Proceedings related to plea agreements and negotiations are a critical phase of the litigation for purposes of the Sixth Amendment. Padilla v. Kentucky, -- U.S. --, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284 (2010). Counsel that is "ineffective in preserving fairness" violates the Sixth Amendment right to counsel. Mickens v. Taylor, 535 U.S. 162, 166, 122 S. Ct. 1237, 1240, 152 L. Ed. 2d 291 (2002) (citing Strickland v. Washington, 466 U.S. 668, 685-686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

**1.  Substitute Counsel**

Courts have long recognized that the Sixth Amendment right to counsel encompasses a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties. Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991) (citing Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220 (1981). The appointment of substitute counsel is warranted, however, only when the defendant demonstrates justifiable dissatisfaction with his appointed attorney. United States v. Barrow, 287 F.3d 733, 737 (8th Cir. 2002) (citing United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1993)). A defendant who is dissatisfied with his or her appointed counsel must show good cause to merit substitution of counsel, such as a

conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Lockhart, 923 F.2d at 1320; United States v. Barrow, 287 F.3d 733, 738 (8th Cir. 2002). When faced with a motion to appoint substitute counsel, the district court must balance several factors, including "the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job." Barrow, 287 F.3d at 738 (citing Hunter v. Delo, 62 F.3d 271, 274 (8th Cir. 1995)). The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the defendant's relationship with his attorney. Id. There is not good cause for substitution of counsel when the defendant is frustrated with counsel who does not share the defendant's tactical opinions but continues to provide zealous representation. Id. When a lawyer encourages a defendant to plead guilty, courts have held that that does not constitute justifiable dissatisfaction warranting the appointment of new counsel. Id. Moreover, a defendant does not have an absolute right to counsel of his own choosing. United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997).

When a defendant raises a "seemingly substantial complaint" about appointed counsel, the trial judge has a duty to inquire thoroughly into the basis of the defendant's dissatisfaction. Lockhart, 923 F.2d at 1320 (citing United States v. Hart, 557 F.2d 162, 163 (8th Cir. 1977)). In cases in which the defendant asserts the trial judge erred by failing to inquire into a potential conflict of interest with counsel, a defendant must show that a conflict of interest actually adversely affected the adequacy of counsel's performance. Ausler, 545 F.3d at 1104; Koste v. Dormire, 345 F.3d 974, 982-83 (8th Cir. 2003). A trial court has broad discretion in determining

whether to grant a request for substitution of counsel. United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997) (citing United States v. Issaghoolian, 42 F.3d 1175, 1177-78 (8th Cir. 1994)).

Petitioner's Sixth Amendment claims relate to the trial court's alleged failure to inquire into and appoint substitute counsel. Those claims fail because the facts do not establish a conflict of interest and Petitioner did not show that any conflict of interest adversely affected counsel's performance. Petitioner first expressed a desire for substitute counsel in the spring of 2005. At that time, Petitioner contacted the public defender's office and sought a new lawyer. The public defender's office declined to assign a different public defender to represent Petitioner and stated that Petitioner's options were to proceed with his attorney Mr. Cox, to represent himself, or to hire a private attorney. The issue was then raised with the court at a hearing on April 18, 2005. (Transcript of Omnibus Hearing on April 18, 2005, Petitioner's Ex. R). At the hearing, Petitioner indicated he wanted substitute counsel because Mr. Cox wanted Petitioner to sign a plea agreement and Petitioner maintained his innocence. The court rejected Petitioner's request for substitute counsel and reiterated Petitioner's choices of proceeding with Mr. Cox, hiring a private lawyer, or proceeding pro se. Petitioner elected to continue to be represented by Mr. Cox. The Court of Appeals noted that it was troubling that the Court did not do more to inquire into whether a conflict of interest existed at that time. State v. Shepersky, 2007 WL 2302458, *3 (Minn. Ct. App. Oct. 16, 2007).[4] Nevertheless, the court concluded that there was not evidence in the record to support the allegations that Mr. Cox's representation of Petitioner was inadequate. The Minnesota Court of Appeals' finding is not contrary to federal law. The

_____

[4] The Minnesota Court of Appeals considered Petitioner's Sixth Amendment right to counsel claims for the April 2005 time period in an appeal arising from his conviction for driving under the influence. Mr. Cox represented Petitioner on that charge, as well as the charges to which Petitioner pled guilty. The court therefore, correctly applied the doctrine of collateral estoppel to prohibit Petitioner from re-litigating the same issue in his subsequent appeal related to the guilty plea. Burns v. Commissioner of Revenue, -- N.W.2d --, 2010 WL 3034264, *2 (Minn. Aug. 5, 2010) (citing Kaiser v. N. State Power Co., 353 N.W.2d 899, 902 (Minn. 1984)).

only alleged conflict Petitioner identified at that time was that Mr. Cox was encouraging Petitioner to sign a plea agreement. This is an insufficient basis to require a court to appoint substitute counsel and Petitioner has not demonstrated an actual conflict of interest with his lawyer in April 2005 sufficient to offend the Sixth Amendment.

Petitioner next contends that the trial court should have appointed him new counsel after his plea agreement when Petitioner argued that he had been coerced into signing the plea agreement and he wanted to withdraw the plea. The facts, however, contradict Petitioner's assertion that there was an irreconcilable conflict in the relationship. After the plea agreement was signed, Mr. Cox admittedly declined to meet alone with Petitioner on February 3, 2006. Mr. Cox stated, however, that he was concerned that Petitioner would make false accusations about what occurred in the meeting. Mr. Cox also stated that he would represent Petitioner at the hearing if he continued to sentencing, but if Petitioner wanted to withdraw his guilty plea based on the allegation that Mr. Cox had coerced Petitioner into pleading guilty, Mr. Cox would contact his supervisor about assigning a substitute public defender. (Letter dated February 3, 2006 from Steven Cox, Petitioner's Ex. T). At the sentencing hearing later that day, Mr. Cox reported to the Court that Petitioner was seeking a continuance to consider filing a motion to withdraw his plea agreement based on his belief that Mr. Cox had coerced him into the plea agreement. (Transcript of Sentencing Hearing on February 3, 2006, Petitioner's Ex. W). Mr. Cox also reiterated that the public defender's office was prepared to assign Petitioner a new attorney should he wish to withdraw his plea-either an attorney from another district or from the State Public Defender's Office. At that time, the Court inquired as to how Petitioner wanted to proceed. Petitioner then retracted his claim that Mr. Cox had coerced him into signing the plea agreement, stating he should not have used the word "coerce" and that he merely had

reservations about language in the agreement. Petitioner stated he did not want to withdraw his plea and only wanted more time to look at the paperwork related to the plea agreement and sentencing. Mr. Cox and his supervisor, Mr. Friedman, then agreed to meet with Petitioner to discuss the plea. The Court concluded that if Mr. Cox's supervisor was involved, the case could proceed to sentencing at a later date. Prior to the continued sentencing hearing on February 9, 2006, Petitioner had the opportunity to speak to Mr. Cox and his supervisor, Mr. Friedman, although Petitioner claims he did not have sufficient time to speak to his attorneys before the hearing. At the hearing, however, Petitioner again apologized for his previous claim that Mr. Cox had coerced him into signing the plea agreement. Instead, he stated only that he felt "rushed" into signing the plea agreement but that the pressure was not caused by Mr. Cox. Petitioner concluded by stating "I do not believe that . . . he has done me wrong . . . by any means whatsoever." Petitioner agreed to "just leave [the plea] because my counsel, Mr. Coz [sic], I trust in him." These facts demonstrate that the trial court satisfied its obligation to inquire into any potential conflict. Further, Petitioner was provided with a second lawyer to assist him. Finally, Petitioner stated on the record that his lawyer did not coerce him into signing the plea agreement. The statements made on the record during the pre-trial proceedings show that Petitioner did not believe that he had been coerced and was confident in the representation by his counsel even though he may have disagreed with his counsel at times. Because Petitioner has not demonstrated an actual conflict of interest, there is no Sixth Amendment violation. With respect to this issue, this Court recommends that the Petition be denied.

## 2. Ineffective Assistance of Counsel

Generally, to establish a constitutional violation of the Sixth Amendment based on ineffective assistance of counsel, a defendant must demonstrate that the lawyer's performance

was deficient and caused prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mickens, 535 U.S. at 166; Strickland, 466 U.S. at 694; Ausler v. United States, 545 F.3d 1101, 1103 (8th Cir. 2008). Where the assistance of counsel was denied entirely or during a critical stage of the proceeding, however, the defendant does not need to show that the outcome of the proceedings would have been different. Mickens, 535 U.S. at 166. In such cases, the likelihood of an unreliable verdict is so high that a case-by-case inquiry is not necessary. Id. "But only in circumstances of that magnitude do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." Id. (citing United States v. Cronic, 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). A lawyer's performance is deficient when it falls below the "range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687 cited in Theus v. United States, 611 F.3d 441, 446-47 (8th Cir. 2010). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

All of Petitioner's claims that Mr. Cox was ineffective are essentially arguments that Mr. Cox advocated for a plea agreement rather than developing the case for trial. The evidence of record, however, establishes that Petitioner expressed concerns about Mr. Cox's trial strategy, but not that Mr. Cox's representation was outside the bounds of that expected of a competent attorney. Petitioner argues that Mr. Cox was ineffective because he should not have advocated for a plea when he knew Petitioner was innocent of the drive-by shooting. He maintains his innocence of the drive-by shooting by asserting the various reasons a fact-finder might disbelieve the government's witnesses. Petitioner never acknowledges, however, that a fact-finder might also have reasons to disbelieve Petitioner's claims of innocence, including his prior convictions

for crimes involving firearms. Petitioner has not overcome the presumption that Mr. Cox's recommendation to seek a plea agreement was sound trial strategy. As set forth above, Petitioner has not established his innocence to such a degree that it is reasonably probable the outcome of the proceedings would have been different if Mr. Cox had not advocated for a plea agreement and instead went to trial. Petitioner also makes conclusory allegations that Mr. Cox failed to question witnesses or investigate Petitioner's alibis. Petitioner has not put forth evidence regarding what steps Mr. Cox took or did not take in developing the case for trial. These conclusory allegations are insufficient to establish a Sixth Amendment violation warranting habeas corpus relief. Therefore, the Court recommends the Petition be denied.

In sum, Petitioner's claim that the government violated <u>Brady</u> by failing to timely produce exculpatory evidence is procedurally defaulted and not excused by the actual innocence exception. The evidence of record also establishes that Petitioner's <u>Alford</u> plea to the drive-by shooting was supported by a sufficient factual basis and the plea was voluntary and intelligent. Finally, Petitioner has not established a violation of his Sixth Amendment right to counsel because Petitioner has not shown a conflict of interest with his counsel or that his counsel was constitutionally ineffective.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. Daniel</u>, 529 U.S. 473, 484 (2000). In

this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of

Appeals, would decide Petitioner's claims any differently than they have been decided here.

Petitioner has not identified, (and the Court cannot independently discern), anything novel,

noteworthy or worrisome about this case that warrants appellate review. It is therefore

recommended that Petitioner <u>not</u> be granted a COA in this matter.

## VI.    <u>RECOMMENDATION</u>

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.    Petitioner's Petition for Habeas Corpus Relief (Doc. No. 1) be **DENIED;**

2.    This action be **DISMISSED WITH PREJUDICE**; and

3.    Petitioner not be granted a Certificate of Appealability.


Dated: September 10, 2010                              s/Susan Richard Nelson
                                                       SUSAN RICHARD NELSON
                                                       United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court, and serving all parties by **<u>September 28, 2010,</u>** a writing which
specifically identifies those portions of this Report to which objections are made and the basis of
those objections. Failure to comply with this procedure may operate as a forfeiture of the
objecting party's right to seek review in the Court of Appeals. A party may respond to the
objecting party's brief within ten days after service thereof. A judge shall make a de novo
determination of those portions to which objection is made. This Report and Recommendation
does not constitute an order or judgment of the District Court, and it is therefore not appealable
to the Court of Appeals.